UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VON LESTER TAYLOR,<br><br>                    Petitioner,<br><br>   v.<br><br>CBS BROADCASTING INC.,<br><br>                    Respondent. | Case No. _____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO COMPEL NON-PARTY CBS BROADCASTING, INC. TO COMPLY WITH PROPERLY SERVED SUBPOENA; DECLARATION OF BRIAN M. POMERANTZ; EXHIBITS 1-7** |

Sean K. Kennedy
Federal Public Defender
Brian M. Pomerantz
Assistant Federal Public Defender
Office of the Federal Public Defender
321 East 2nd Street
Los Angeles, California  90012
Telephone:  (213) 894-8859
Facsimile:  (213) 894-1221
Email:  Brian_pomerantz@fd.org

*Counsel for Von Lester Taylor*

Rodney A. Smolla
President
Furman University
3300 Poinsett Highway
Greenville, South Carolina  29613
Telephone:  (864) 294-2100
Facsimile:  (864) 294-3939
Email:  rod.smolla@furman.edu


*Of Counsel*

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.     The Subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.     The Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      1.     CBS objects to the Subpoena on the ground that it requires
            disclosure of privileged material in contravention of the
            qualified First Amendment and federal common law
            reporter's privilege.  See Fed. R. Civ. P. 45(c)(3)(A)(iii) . . . . . . . . . . . . . . . . 6

      2.     CBS objects to the Subpoena on the ground that it fails to
            comply with Rule 6 of the Rules Governing Section 2254 Proceedings.
            See U.S.C.S. § 2254 Proc. R. 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      3.     CBS objects to the Subpoena on the grounds that it is
            grossly overbroad, vague, ambiguous, unduly burdensome
            and oppressive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      4.     CBS objects to the Subpoena to the extent it seeks the
            disclosure of information that is protected by the attorney-
            client privilege, the attorney work product doctrine or any
            other applicable privilege.  CBS will not disclose such
            information or produce such materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      5.     CBS objects to the Subpoena to the extent that it seeks
            information that is neither relevant to the issues involved in
            this habeas proceeding nor otherwise properly the subject of
            discovery in such a proceeding  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      6.     CBS objects to the Subpoena to the extent that it attempts
            to impose obligations exceeding those authorized or imposed
            by the Federal Rules of Civil Procedure and/or the Rules
            Governing Section 2255  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

DECLARATION OF BRIAN M. POMERANTZ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                          **Page(s)**

*America Rock Salt Co., LLC v. Norfolk S. Corp.,*
    228 F.R.D. 426 (W.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Athridge v. Aetna Casualty & Sur. Co.,*
    184 F.R.D. 181 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Baker v. F. & F. Investment,*
    339 F. Supp. 942 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Beatty v. Greiner,*
    50 F. App'x 494, 497 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Berger v. United States,*
    295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blum v. Schlegel,*
    150 F.R.D. 42 (W.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Bonanno,*
    344 F.2d 830, 833 (2d Cir.1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bowne of New York City, Inc. v. AmBaseCorp.,*
    150 F.R.D. 465 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bracy v. Gramley,*
    520 U.S. 899, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) . . . . . . . . . . . . . . . . . . . . 16

*Branzburg v. Hayes,*
    408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) . . . . . . . . . . . . . . . . . . . . . 11

*Brick v. Dominion Mortg. and Realty Trust,*
    442 F. Supp. 283 (W.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Chevron Corp.,*
    749 F. Supp. 2d 170 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chevron Corp. v. Berlinger,*
    629 F.3d 297 (2nd Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v.*
*Phillips Petroleum Co.,*
    105 F.R.D. 16 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Daval Steel Products v. M/V Fakredine,*
    951 F.2d 1357 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

*Davidson Pipe Co. v. Laventhol & Horwath,*
    120 F.R.D. 455 (S.D.N.Y.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                      **Page(s)**

*Drake v. Portuondo*,
    321 F.3d 338 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*During v. City University of N.Y.*,
    2006 U.S. Dist. LEXIS 53684 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fisher v. United States*,
    425 U.S. 391, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976) . . . . . . . . . . . . . . . . . . . . 14, 15

*Gonzales v. National Broadcasting Co.*,
    194 F.3d 29 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Automobile
Servicenter of Haverstraw, Inc.*,
    2003 U.S. Dist. LEXIS 15917 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Grand Jury Subpoena Dated Jan. 4, 1984*,
    750 F.2d 223 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Grand Jury Subpoena, Judith Miller*,
    397 F.3d 964 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Harris v. Nelson*,
    394 U.S. 286, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969) . . . . . . . . . . . . . . . . . . . . . 16

*International Bhd. of Teamsters v. Eastern Conference of Teamsters*,
    162 F.R.D. 25 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*,
    58 F.R.D. 348 (S.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McKevitt v. Pallasch*,
    339 F.3d 530 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*New York Times Company v. Gonzales*,
    459 F.3d 160 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Nieblas v. Smith*,
    204 F.3d 29 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) . . . . . . . . . . . . . . . . . . . . 5, 9

*PPM America, Inc. v. Marriott Corp.*,
    152 F.R.D. 32 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Petroleum Products Antitrust Litigation*,
    680 F.2d 5 (2nd Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rios v. United States*,
    364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960) . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **Page(s)**

*United States v. Construction Products Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Cutler*,
    6 F.3d 67 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

*United States v. International Business Machines Corp.*,
    83 F.R.D. 97 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Nixon*,
    418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Treacy*,
    639 F.3d 32 (2nd Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Westhemeco, Ltd. v. New Hampshire Insurance Co.*,
    82 F.R.D. 702 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

**FEDERAL STATUTES**

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15, 16

Fed. R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**MISCELLANEOUS**

J. Moore, Federal Practice 34.07, at 34-57 & n.18) (2d ed. & 1981 Supp.) . . . . . . . . . . . . 13

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    (3d ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13, 14, 15

## MEMORANDUM OF LAW

I.     **PRELIMINARY STATEMENT**

Petitioner Von Taylor respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 45, to compel compliance by CBS Broadcasting Inc. ("CBS") with the subpoena *duces tecum* (the "Subpoena") issued in connection with the above referenced action, which is pending in the United States District Court for the District of Utah.

The Subpoena (attached hereto as Ex. 1) directs CBS to produce materials relating to a television program aired by the network on December 10, 2011.  That program, titled "Three Days Before Christmas," was broadcast as part of the *Live to Tell* series that runs under the umbrella of CBS's *48 Hours* franchise.  As set forth more fully below, other than serving a set of objections, CBS has refused to comply with the Subpoena.

To date, CBS has not produced any materials responsive to the Subpoena and has communicated its intent not to further respond via both the objections served on January 20, 2012 (Ex. 2, CBS Objections), and in a subsequent telephonic meet and confer on April 10, 2012. (*See* Declaration of Brian M. Pomerantz, ¶6, attached hereto.)  CBS did not provide a privilege log for documents being withheld on the basis of privilege or the work product doctrine, as required by Fed. R. Civ. P. 45(d)(2)(A)(ii).

Because CBS's objections are meritless, Mr. Taylor requests the issuance of an order, directing:  (1) the production of all responsive, non-privileged material called for by the Subpoena; and (2) the preparation of a privilege log, as required by Rule 45, for all responsive material as to which CBS is claiming privilege.

II.     **BACKGROUND**

Mr. Taylor is on death row in Utah.  Misinformed that a bullet he fired killed Kaye Tiede, he pled guilty to the intentional murders of Kaye Tiede and Beth Potts, despite the fact that Mr. Taylor did not fire any of the three bullets that struck Beth Potts.  Edward Deli, Mr. Taylor's co-defendant, and the man who murdered Kaye Tiede and Beth Potts, was spared a

1

death sentence when one juror refused to vote for first degree murder. The fact that the murderer of Ms. Potts and Ms. Tiede has escaped death row, while Mr. Taylor literally pays for Mr. Deli's crimes, casts a dark cloud over this case.

Mr. Taylor is not without fault. He fired the first shot at Kaye Tiede, and was present when she and Beth Potts were murdered. However, he is not on death row for felony murder, he is there for the *intentional murders* of Kaye Tiede and Beth Potts even though he did not murder them. Mr. Taylor's factual innocence of those murders is a significant issue before the Federal District Court for the District of Utah. Clarification of the truth of what happened on December 22, 1990, is at the heart of the subpoena served on CBS.

### A.     The Subpoena

On January 20, 2012, Mr. Taylor served a subpoena *duces tecum* on CBS, seeking:

> All video outtakes, recordings or other memorializations of interviews, videos from other sources, pictures, and written materials collected by producers, employees, and/or agents of CBS Broadcasting, Inc. or the television program *48 Hours*, in connection with the production and preparation of the *48 Hours* television segment "Three Days Before Christmas," and its companion web pages, that are in the possession, custody, or control of CBS Broadcasting, Inc. and/or the producers, employees, and/or agents associated with the *48 Hours* television segment "Three Days Before Christmas."

(Ex. 1.)

The information requested by the subpoena is relevant to Mr. Taylor's habeas proceeding because the information obtained by CBS conflicts with trial testimony and the prosecution's theory of the case. For instance, three minutes into the program, Linae Tiede[1] said,

> My mom was saying to 'em, 'What is it you want? Why are you here? I'll give you anything.' . . . Seconds after she had said that, gunfire started imploding, exploding, explosion. From everywhere. I saw my mom go down. I turned at that point. And looked over my shoulder to my Grams. And saw her get shot in the head. And blood spray everywhere. . . . I heard her gasp for some breath. And then it was just dead silence. I felt pretty certain that they were dead.

---

[1] Linae Tiede is the daughter of Kaye Tiede and granddaughter of Beth Potts. She was present at the time that her mother and grandmother were killed by Mr. Deli.

Ms. Tiede's *48 Hours* story is very different from the one she told at Mr. Taylor's penalty phase trial.  The events as described by Ms. Tiede at trial were slower and more spread out.  (Ex. 3, Reporter's Transcript, at 505-10.)  The difference is substantial because Ms. Tiede's testimony at Mr. Taylor's penalty phase trial allowed the jury to believe that Mr. Taylor might have been responsible for all of the gunfire, whereas her *48 Hours* version makes it clear that both Mr. Taylor and Mr. Deli were firing their weapons.

Neither story aligns with Ms. Tiede's preliminary hearing testimony, which tells a third version of events.  Mr. Taylor has previously questioned the discrepancies in Ms. Tiede's stories, which unfortunately continue to change in each retelling.  While the changes raise doubt as to what Ms. Tiede actually witnessed, they also lend further support to Mr. Taylor's contention that Mr. Deli was genuinely responsible for the deaths of Kaye Tiede and Beth Potts.

That is not the only area where Linae Tiede's television interview raised substantial questions regarding the evidence put before the jury.  Five minutes and forty-seven seconds into the television program, Ms. Tiede stated that her mother reached over her chest, saying "I'd [sic] been shot."  Ms. Tiede's physical re-enactment of her mother's action is striking because of the placement of her hands over the center of her upper chest.  (*See* Ex. 4.) According to the Coroner's report, gunshot wound number three -- the only wound to Kaye Tiede's chest -- passed back-to-front.  (*See* Ex. 5, Autopsy Report of Kaye Tiede, at 6.)  If that bullet was the first shot to Kaye Tiede, it could not have come from Mr. Taylor's weapon because he was standing in front of Kaye Tiede, not behind her.  (Ex. 3, Reporter's Transcript, at 574.)

Ms. Tiede's interview does not stand alone in raising material questions about the presentation to the penalty phase jury.  Joseph Offret, the lead investigator on the case, told *48 Hours* that,

> [t]his might appear to be a slam-dunk case to some folks.  But
> from an investigator's point of view . . . it was very complicated
> and very complex.  Sure, it's not a whodunit . . . there's no
> question who committed the crimes. . . .  But being able to
> determine . . . what criminal act each suspect committed -- that

was a challenge.[2]

In the broadcast segment, Detective Offret never explains why it was such a challenge or what criminal act he determined each defendant to have committed.  If he determined that Mr. Deli was responsible for even one of the murders, then Mr. Taylor's guilty plea to two intentional murders is not correct.  It is highly possible that CBS's outtakes, recordings, or other memorializations of the interviews contain Detective Offret opining that Mr. Deli was responsible for one or both of the murders, as he later added that when,

> Mr. Deli went to trial. . . . we were as prepared, if not maybe
> even a little bit more prepared, to go into the Deli trial as we
> were with the Von Taylor trial[3] . . . I expected Edward Deli . . .
> to be convicted of first-degree murder. . . .  the case had been
> thoroughly investigated, and the prosecutor's office had done an
> excellent job.[4]

The broadcast footage does not include his explanation as to why they were more prepared for a trial for Mr. Deli, who did not get the death penalty, than for Mr. Taylor, who appears not to have killed anyone.

Compounding the potential importance of the material being sought here, only a very small portion of the transcripts from Mr. Deli's trial were ever transcribed.  To the extent that the prosecution presented a theory of the case inconsistent with Mr. Taylor's guilt, that theory may involve exculpatory evidence that Mr. Taylor has never been privy to.

**B.    The Order**

Presented with these very same discrepancies and questions, on January 6, 2012, Judge Tena Campbell, who is presiding over Mr. Taylor's federal habeas case in the District of Utah, found good cause for the Subpoena to issue.  (Ex. 6; Ex. 7.)

In a two-page letter dated January 20, 2012, CBS objected to discovery with a list of six objections.  (Ex. 2, CBS Objections.)  None of these objections properly block the enforcement of Mr. Taylor's subpoena, which is necessary for Judge Campbell to adjudicate

---

[2]  Approximately twenty-eight minutes and thirty seconds into the program.

[3]  Approximately thirty-three minutes into the program.

[4]  Approximately thirty-five minutes and fifty seconds into the program.

4

his habeas petition and protect his constitutional rights.

## III.   ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure provides the framework for securing from non-parties, through the use of subpoenas, documents, electronically stored information, and tangible things relevant to a pending litigation. Fed. R. Civ. P. 45. It is well settled that the scope of a Rule 45 subpoena is informed by Rule 26, which governs civil discovery generally. 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2452 (3d ed. 2008) (Rule 26 of the Federal Rules of Civil Procedure defines and governs the scope of discovery for all discovery devices, and, therefore, Rule 45 must be read in light of it.). "Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement." *During v. City Univ. of N.Y.*, 2006 U.S. Dist. LEXIS 53684, at \*6 (S.D.N.Y. 2006).

Relevance has already been determined by Judge Campbell, who found good cause for the Subpoena to be issued. However, should this Court conduct an independent review, Mr. Taylor's Subpoena surpasses the standards for relevancy in this District and the Second Circuit. Under Rule 26, relevance is broadly construed to embrace evidence that has even a possibility of being relevant to a claim, regardless of whether it would ultimately be admissible at trial. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."); *During*, 2006 U.S. Dist. LEXIS 53684, at \*8-9; *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (Rule 26 relevance is an "obviously broad rule" that is "liberally construed."); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 2003 U.S. Dist. LEXIS 15917, at \*17 (S.D.N.Y. 2003) (Discovery is relevant if there is "any possibility that the information sought may be relevant to the subject matter of the action" (citing *Westhemeco, Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 709 (S.D.N.Y. 1979))).

The Federal Rules also provide federal courts with the power to compel compliance

with subpoenas and disclosure requests that seek relevant information.  See Fed. R. Civ. P.

45(c)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move

the issuing court for an order compelling production or inspection."); Fed. R. Civ. P. 37(a)(l)

("On notice to other parties and all affected persons, a party may move for an order

compelling disclosure or discovery.").

The objections asserted by CBS to justify their refusal to produce any responsive,

non-privileged documents are without merit, as is CBS's failure to prepare an appropriate

privilege log.  Taking each objection in turn:

> **1.    CBS objects to the Subpoena on the ground that it requires disclosure of privileged material in contravention of the qualified First Amendment and federal common law reporter's privilege.  *See* Fed. R. Civ. P. 45(c)(3)(A)(iii).**

The question of whether a journalist's privilege does or does not exist in federal court

litigation, under either the First Amendment or federal common law, is an issue on which

federal circuits are divided nationwide, and Congress has failed to legislate.  *See In re Grand*

*Jury Subpoena, Judith Miller*, 397 F.3d 964, 970 (D.C. Cir. 2005), *cert. denied*, 545 U.S.

1150, 125 S. Ct. 2977, 162 L. Ed. 2d 906 (2005) (rejecting the existence of a First

Amendment privilege); *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) (Posner, J.)

(summarizing the divided judicial precedent).

In the Second Circuit, a journalist's privilege is recognized, though the Second Circuit

has carefully refrained from deciding whether the privilege is grounded in the First

Amendment or federal common law.  *United States v. Treacy*, 639 F.3d 32, 42 (2nd Cir. 2011)

("this argument depends on the assumption that the reporter's privilege is derived from the

First Amendment rather than a federal common law of privileges, a question we have

previously declined to resolve absent any Congressional retrenchment of the privilege. . . .

We once again decline to wade into these constitutional waters"), citing *Gonzales v. National*

*Broadcasting Co.*, 194 F.3d 29, 35 n.6 (2nd Cir. 1999) ("Previous decisions of our court have

expressed differing views on whether the journalists' privilege is constitutionally required, or

rooted in federal common law. . . .  Until Congress legislates to modify the privilege or do

away with it, however, we need not decide whether the privilege is founded in the Constitution.") (internal citations omitted).

The journalist's privilege in the Second Circuit is divided into two distinct tracks, one governing assertions of the privilege to protect the identity of confidential sources or materials obtained under promises of confidentiality, the other for non-confidential materials. When confidential material is sought, the protection for the journalist is higher, as manifest in a three-prong test requiring that the material be: (1) "highly material and relevant," (2) "necessary or critical to the maintenance of the claim," and (3) "not obtainable from other available sources"). *See, e.g., United States v. Treacy*, 639 F.3d at 42; *United States v. Cutler*, 6 F.3d 67, 71 (2d Cir. 1993).

When non-confidential material is sought, however, the test is far less demanding. The applicant seeking disclosure must only demonstrate that the material bears (1) "likely relevance," (2) to a "significant issue" in a pending proceeding, and (3) is not "reasonably attainable from other available sources." *United States v. Treacy*, 639 F.3d at 42 ("'Where a civil litigant seeks nonconfidential materials from a nonparty press entity, the litigant is entitled to the requested discovery notwithstanding a valid assertion of the journalists' privilege if he can show that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources'"), quoting *Gonzales v. National Broadcasting Co.*, 194 F.3d at 36; *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2nd Cir. 2011) (reciting *Gonzales* standard). The Second Circuit has repeatedly emphasized that this less stringent standard applicable to non-confidential material is more easily overcome than the standard applicable to the protection of confidential information. "Thus, because 'the protection of confidential sources is not involved, the nature of the press interest protected by the privilege is narrower' and the privilege is 'more easily overcome.'" *United States v. Treacy*, 639 F.3d at 42, quoting *Gonzales*, 194 F.3d at 36.

CBS has not claimed, and cannot plausibly claim, that the materials sought by Mr. Taylor in his subpoena are confidential. In prior Second Circuit cases dealing with journalistic privileges, "confidential" has referred to either the confidential identity of the

source or the confidential substance of the information revealed by a source. *See, e.g., PPM America, Inc. v. Marriott Corp.*, 152 F.R.D. 32, 35 (S.D.N.Y. 1993); *In re Petroleum Products Antitrust Litigation*, 680 F.2d 5, 7 (2nd Cir. 1982). Thus a "confidential source" defines a relationship that comes into being when a reporter and a person have agreed that the person's identity will not be disclosed and the person's identity is not, in fact, disclosed. *Baker v. F. & F. Inv.*, 339 F.Supp. 942, 944 (S.D.N.Y. 1972), *aff'd* 470 F.2d 778 (2nd Cir. 1972). In some instances, a source may insist that the journalist not reveal the content of what the source disclosed, but instead find other sources who will confirm that content – as in the famous "Deep Throat" source in the Watergate scandal.

The material that Mr. Taylor seeks from CBS does not involve any such confidential sources or information. CBS openly broadcasted its interviews with Linae Tiede and Detective Joseph Offret, for example. Their identities are not confidential, nor are the statements they openly made to CBS on camera in any sense "confidential." When an interview subject agrees that his or her name and identity need not be kept secret, and when the subject agrees that what he or she says in a filmed interview may be shown to the public in the complete discretion of the journalist, the source is not insisting on confidentiality, and the "agreement" between the source and the journalist, whether explicit or implicit, written or oral, is not a confidentiality agreement. *See Blum v. Schlegel*, 150 F.R.D. 42, 45 (W.D.N.Y. 1993) (claims of assurances by journalist "that certain information would not be publicized and would remain confidential" does not convincingly demonstrate confidentiality when "the overall purpose of the interview was to gather information for an article" which was in fact "published based on information given during the interview"). Were the rule otherwise, the Second Circuit's dividing line between the stringent test applicable to confidential materials and the less demanding test applicable to non-confidential materials would disappear. *Gonzales*, the case that first established this divide, proves the point. The case involved a request for outtakes from an NBC *Dateline* segment, by plaintiffs in a civil rights action seeking to establish police abuse in Louisiana. The Second Circuit, applying its newly announced less demanding test for non-confidential materials, ordered the outtakes produced.

8

As in *Gonzales,* the material sought here by Mr. Taylor is in no common or legal sense "confidential."  CBS did not blur the faces or disguise the voices of its interviewees on camera.  That CBS chose to air some footage and not air other footage does not magically render "confidential" the footage not included in the broadcast.  Once again, it is always the case that when a source is interviewed, openly and without reservation as to identity or content, the journalist will ultimately decide what does or does not survive the final cut.  But this does not mean that what is not revealed in the journalist's story is now transformed in law to "confidential" material.  There is no such alchemy.  If this were the law, then *Gonzales* would make no sense, and the whole body of law treating "outtakes" as non-confidential would be incoherent.

Mr. Taylor's subpoena application easily satisfies the *Gonzales* standard.  For reasons already explained in this submission, the "likely relevant" standard is plainly met.  Under the liberal relevancy standards of this District and Circuit, all statements made to CBS by key players in the murder investigation, such as Linae Tiede and Detective Joseph Offret, are manifestly relevant to the core issues germane to Mr. Taylor's pending habeas claim in Utah. As a matter of comity and respect for another Federal District Court, Judge Campbell's good cause order is enough on its own to establish relevancy.  But even setting Judge Campbell's determination aside, by any measure, the full recorded statements of a percipient witness to the actual murders and the statements of the principal investigator of the crime certainly satisfy the elastic formulation that the material sought "encompass any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. at 351.

So too, the material sought is plainly germane to a "significant issue" in Mr. Taylor's habeas proceeding.  In *United States v. Cutler*, an attorney for a defendant in a criminal case was charged with contempt of court for extra-judicial statements, broadcast on television, about a pending case, in putative violation of a trial court's gag order.  To assist in his defense, the attorney subpoenaed the television station's outtakes.  The Second Circuit ruled that the defense attorney's need for the film footage in aid of his defense to the contempt

charge trumped the journalist's privilege. *United States v. Cutler*, 6 F.3d at 74. If the outtakes were significant in *Cutler*, involving a defense against a charge of contempt of court, then surely the outtakes are significant in Mr. Taylor's case, involving a defense to capital murder. Mr. Taylor's habeas claim is factual innocence in the most elementary and primal sense—that he did not murder the victims who tragically died. The outtakes and other material sought from CBS are relevant to that central issue. There is nothing trivial or peripheral about any of the material sought from CBS—the material Mr. Taylor seeks to have disclosed involves the pivotal witnesses to the pivotal question in dispute—and in this capital case, a life hangs in the balance.

Finally, the material sought is not reasonably attainable from other sources. In the present case, as in *Cutler* and *Gonzales*, there is no substitute for the actual footage. The footage is what the footage is, and the camera does not lie. *See Gonzales*, 194 F.3d at 36 ("We agree with the district court that in this instance a deposition is not an adequate substitute for the information that may be obtained from the videotapes.").

Evidentiary privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). In the words of Justice Frankfurter: "Limitations are properly placed upon the operation of this general principle only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Rios v. United States*, 364 U.S. 206, 234, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960) (Frankfurter, J., dissenting).

Even a confidentiality privilege as important to society as the Executive Privilege granted to the President of the United States, a privilege grounded in the core structure of the United Constitution, may be forced to give way to the imperatives of the truth-seeking function in a society dedicated to the rule of law. As the Supreme Court admonished in *United States v. Nixon*:

> But this presumptive privilege must be considered in light of

10

> our historic commitment to the rule of law.  This is nowhere
> more profoundly manifest than in our view that "the twofold
> aim (of criminal justice) is that guilt shall not escape or
> innocence suffer." . . .  We have elected to employ an adversary
> system of criminal justice in which the parties contest all issues
> before a court of law.  The need to develop all relevant facts in
> the adversary system is both fundamental and comprehensive.
> The ends of criminal justice would be defeated if judgments
> were to be founded on a partial or speculative presentation of
> the facts.  The very integrity of the judicial system and public
> confidence in the system depend on full disclosure of all the
> facts, within the framework of the rules of evidence.  To ensure
> that justice is done, it is imperative to the function of courts that
> compulsory process be available for the production of evidence
> needed either by the prosecution or by the defense.

*United States v. Nixon*, 418 U.S. at 708-09, quoting *Berger v. United States*, 295 U.S. 78, 88,

55 S. Ct. 629, 79 L. Ed. 1314 (1935).

If the constitutionally protected confidential conversations of the President of the

United States may be forced to yield to the larger need of society's tribunals to obtain every

person's evidence in pursuit of the search for truth, surely the non-constitutionally protected

non-confidential outtakes of CBS may be so forced to yield.

In sum, the balance of interests here falls overwhelmingly on the side of disclosure of

the information that CBS seeks to shield.  To be sure, our society is deeply committed to the

freedoms of speech and press enshrined in the First Amendment.  Yet in the Second Circuit,

and nationally, it remains an open question whether those constitutional freedoms include a

journalist's privilege *at all*. Many courts nationwide, including the Second Circuit, have either

held, or strongly suggested, that the Supreme Court's seminal decision in *Branzburg v. Hayes*,

408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972), should be read to reject the existence

of any such First Amendment privilege.  As the Second Circuit noted in *New York Times*

*Company v. Gonzales*, 459 F.3d 160 (2nd Cir. 2006), a suit between the New York Times

Company and former Attorney General Alberto Gonzales:

> Unquestionably, the Supreme Court decided in *Branzburg* that
> there is no First Amendment privilege protecting journalists
> from appearing before a grand jury or from testifying before a
> grand jury or otherwise providing evidence to a grand jury
> regardless of any confidence promised by the reporter to any
> source.  The Highest Court has spoken and never revisited the
> question.  Without doubt, that is the end of the matter.

11

*New York Times Co. v. Gonzales*, 459 F. 3d at 174 n.6, *quoting In re Grand Jury Subpoena, Judith Miller*, 397 F.3d at 970 (D.C. Cir. 2005).

Yet whether or not the journalist's privilege is of constitutional stature—a question that remains open in the Second Circuit—the established law is that the interests protected by the privilege are far diminished when the material is not confidential. Whatever modicum of journalistic freedom is implicated by the protection of the material in the possession of CBS that Mr. Taylor seeks to have disclosed, the modest value of that protection pales in comparison to the interests of Mr. Taylor, and to society at large, in obtaining every person's evidence in a proceeding that may determine whether a citizen is to be executed. The balance here overwhelmingly favors disclosure. The material at issue, sought to aid in the truth-seeking function of a habeas proceeding of enormous gravity in which another federal court has already issued a good cause order, implicates interests that reside at the core of our constitutional commitment to due process and the rule of law.

2. **CBS objects to the Subpoena on the ground that it fails to comply with Rule 6 of the Rules Governing Section 2254 Proceedings. See U.S.C.S. § 2254 Proc. R. 6.**

Rule 6 of the Rules Governing Section 2254 Proceedings, states that leave of court is required to conduct discovery: "Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

On January 6, 2012, prior to the serving of the Subpoena, Judge Campbell found good cause for discovery of the documents requested from CBS. (Ex. 6; Ex. 7.) Accordingly, Objection 2 is not meritorious.

3. **CBS objects to the Subpoena on the grounds that it is grossly overbroad, vague, ambiguous, unduly burdensome and oppressive.**

CBS's blanket objection that the subpoena is "grossly overbroad, vague, ambiguous, unduly burdensome and oppressive" (Ex. 2, CBS Objections, at 2), is precisely the kind of response which courts have deemed "not acceptable, and will be overruled." *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 432 (W.D.N.Y. 2004); *see Athridge v. Aetna*

12

*Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("general objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them"); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (discovery responsibilities not met by "familiar litany" that request is "burdensome, oppressive or overly broad.").

As the party opposing discovery, CBS has the burden to object to the subpoena with specificity, including explaining "how, despite the broad and liberal construction afforded the federal discovery rules," the items requested by Mr. Taylor's subpoena are irrelevant, "overly broad, burdensome or oppressive." *Phillips Petroleum*, 105 F.R.D. 16 at 42. CBS's blanket objection offers no such explanation.

Moreover, Mr. Taylor has narrowed the scope of his subpoena in compliance with Rule 34(b) which requires the subpoena to "describe with reasonable particularity each item or *category* of items to be inspected." Fed. R. Civ. P. 34 (emphasis added). While "reasonable particularity" must be defined on a case-by-case basis, Southern District decisions set the test at identification. *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 354 (S.D.N.Y. 1973). Reasonable particularity is satisfied when a reasonable person would know the documents called for by the subpoena. *Id.* (citing 4A J. Moore, FEDERAL PRACTICE 34.07, at 34-57 & n.18) (2d ed. & 1981 Supp.). For example, a subpoena calling for "studies, reports or analyses" on computer products competing with IBM was reasonably particular in identifying a category of documents for discovery. *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 107 (S.D.N.Y. 1979).

The degree of specificity required turns on the degree of knowledge a movant such as Mr. Taylor may reasonably have about the documents requested. *Westhemeco Ltd.*, 82 F.R.D. at 709. Mr. Taylor's Subpoena should not fail merely because Mr. Taylor is unable to describe CBS's outtakes and related materials produced in New York with an exacting precision. In such cases, "a generalized designation should be sufficient when the party seeking discovery cannot give a more particular description and the party from whom discovery is sought will have no difficulty in understanding what is wanted." 8B Wright &

13

Miller, Fed. Prac. & Proc. Civ. § 2211 (3d ed.) (citing *Brick v. Dominion Mortg. and Realty Trust*, 442 F. Supp. 283, 309 (W.D.N.Y. 1977)).

Here, Mr. Taylor's categorical description of video outtakes, recordings or other memorializations of the interviews in connection with the program "Three Days Before Christmas" sufficiently identifies these items for CBS to understand what is wanted and is consistent with the particularity requirements of Rule 34.

> **4.    CBS objects to the Subpoena to the extent it seeks the disclosure of information that is protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege.  CBS will not disclose such information or produce such materials.**

CBS asserts a general objection based on "attorney-client privilege, the attorney work product doctrine or any other applicable privilege." (Ex. 2, CBS Objections, at 2).  As the party asserting privilege, CBS has the burden of offering "sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege." *United States v. Constr. Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (quoting *Bowne of New York City, Inc. v. AmBaseCorp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)); *see In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984) ("a burden not 'discharged by mere conclusory or ipse dixit assertions'") (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965)).  The party claiming privilege in resistance to a Rule 45 subpoena must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2).

CBS's two-page letter provides no basis for assessing whether any privilege applies to the withheld materials.  To invoke the attorney client privilege, CBS must show the requested video outtakes and related materials in connection with the *48 Hours* television segment, "Three Days Before Christmas," involved "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) was made for the *purpose* of obtaining or providing legal advice." *United States v. Constr. Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S.

Ct. 1569, 48 L. Ed. 2d 39 (1976)) (emphasis added).  In raising the work product doctrine,

CBS needs to show that these materials were "prepared principally or exclusively to assist in

anticipated or ongoing litigation." *Constr. Products Research, Inc.*, 73 F.3d at 473.

While neither privilege appears applicable, CBS provides no supporting information

and no privilege log so as to assess whether any of the requested materials may be protected

from disclosure.  Such a "privilege log must be served with the objections or motion to

quash." *In re Chevron Corp.*, 749 F. Supp. 2d 170, 181 (S.D.N.Y. 2010).  CBS's conclusory

assertions of privilege fail to meet this burden for withholding discovery.

> **5.      CBS objects to the Subpoena to the extent that it seeks information that is
> neither relevant to the issues involved in this habeas proceeding nor
> otherwise properly the subject of discovery in such a proceeding.**

In a habeas proceeding, an inmate is entitled to the same broad rules of discovery as a

civil litigant, when a judge, as here, has granted leave upon finding good cause for discovery.

28 U.S.C. § 2254 Proc. R. 6(a).  Judge Campbell, who has presided over this case for five

years, found good cause and granted leave for discovery to aide her in her evaluation and

determination of Mr. Taylor's habeas claims, including, but not limited to his assertion that he

is factually innocent of the murders of Kaye Tiede and Beth Potts.

As noted above, subpoenas enjoy the same broad scope of discovery permitted under

Rule 26(b) (discovery generally) and Rule 34 (documents and electronic data).  *See* Fed. R.

Civ. P. 45 Advisory Committee Notes to 1970 Amendment ("the scope of discovery through a

subpoena is the same as that applicable to Rule 34 and the other discovery rules"); *see also* 9A

Wright & Miller § 2459, at 42 (scope of discovery through a subpoena is "exceedingly broad"

and incorporates the provisions of Rules 26(b) and Rule 34).  The scope of discovery under

Rule 26(b) -- and therefore subpoenas under Rule 45 -- encompasses "any nonprivileged

matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26.

The rule is "liberally construed," *International Bhd. of Teamsters v. Eastern

Conference of Teamsters*, 162 F.R.D. 25, 29 (S.D.N.Y. 1995) (quoting *Daval Steel Prods.*,

951 F.2d at 1367), to include "inquiry into facts that may be used to impeach a witness's trial

testimony." *International Bhd. of Teamsters*, 162 F.R.D. at 29 (citing *Davidson Pipe Co. v.*

15

*Laventhol & Horwath*, 120 F.R.D. 455, 462-64 (S.D.N.Y.1988)).  Moreover, with a finding of good cause, the scope broadens to allow discovery of "any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26.

Judge Campbell's order finding good cause and granting leave for discovery in his habeas proceeding removes any doubt as to whether Mr. Taylor's discovery request is relevant to the issues involved in his proceeding.  Moreover, as explained in response to CBS's general objection to the breadth of the subpoena, the burden remains on CBS, the party seeking to block discovery, to show why Mr. Taylor's subpoena is irrelevant to the issues involved.

> **6.  CBS objects to the Subpoena to the extent that it attempts to impose obligations exceeding those authorized or imposed by the Federal Rules of Civil Procedure and/or the Rules Governing Section 2255 [sic][5] Proceedings**

CBS's objection to the subpoena imposing obligations "exceeding" those authorized by § 2254 fails because those obligations have been set by Judge Campbell's order, acting within the scope of her authority under § 2254 to grant leave for discovery with good cause so that she can properly adjudicate Mr. Taylor's habeas petition.

As the United States Supreme Court noted, there is "no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus."  *Harris v. Nelson*, 394 U.S. 286, 292, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969).  In fulfilling that duty, judges may grant discovery in habeas proceedings as law and justice require.  *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997).  Indeed,

> where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an *adequate inquiry*.

*Harris*, 394 U.S. at 300 (emphasis added); *see Bracy*, 520 U.S. at 908-09 (noting 'good cause' for discovery under Rule 6(a) is "meant to be 'consistent' with *Harris*"); *accord Drake v.*

---

[5] Counsel for CBS has confirmed that the objection was intended to address Section 2254.

16

*Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003); *Beatty v. Greiner*, 50 F. App'x 494, 497 (2d Cir. 2002) (quoting *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1990) (court has "broad discretion to hear further evidence in habeas cases").

The materials in CBS's possession go to the issue of Mr. Taylor's actual innocence. Because actual innocence is a gateway to overcome procedural bars, an adequate inquiry into Mr. Taylor's claims may depend on discovery of the video outtakes, recordings or other memorializations of interviews in connection with the *48 Hours* television segment "Three Days Before Christmas."

CBS's general objections to discovery, absent further explanation, offer no basis for hindering Judge Campbell's ability to properly adjudicate Mr. Taylor's habeas petition and determine whether there has been a violation of his constitutional rights.

## IV.    CONCLUSION

Accordingly, because good cause has been established, Mr. Taylor respectfully requests that this Court grant this Motion and order CBS to produce the materials sought by his subpoena.

Dated:  August 17, 2012                    Respectfully submitted,

                                                          Sean K. Kennedy
                                                          Federal Public Defender

                                   By:      _____
                                                          Brian M. Pomerantz
                                                          Assistant Federal Public Defender
                                                          Counsel for Von Lester Taylor

## PROOF OF SERVICE

I, **De Anna Dove**, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled below; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, and at whose direction I served a copy of the attached **Notice of Motion; Memorandum of Law in Support of Petitioner's Motion to Compel Non-Party CBS Broadcasting, Inc. to Comply with Properly Served Subpoena; Declaration of Brian M. Pomerantz; Exhibits 1-7** on the following individual(s) by:

| [] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows: | [] Placing same in an envelope for hand-delivery addressed as follows: | [] Placing same in a sealed envelope for collection and mailing via the United States Post Office, addressed as follows: | [X] Emailing same addressed as follows: marykate.tischler@ cbs.com |
|---|---|---|---|

Mary Kate Tischler, Esq.
Vice President and Assistant General Counsel
CBS
51 West 52 Street
New York, New York  10019-6188

This proof of service is executed at Los Angeles, California, on **August 17, 2012.**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DE ANNA DOVE